# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| GUY MORIN, *individually and on behalf of all others similarly situated*,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN SERVICES, INC. and AMERICAN SECURITY of GREENVILLE, LLC,<br><br>　　　　Defendants. | Civil Action No. 6:20-cv-3271-TMC<br><br>**ORDER** |

This matter is before the Court on the parties' Joint Motion for Settlement Approval (ECF No. 62) and Plaintiff's Unopposed Motion to Approve Attorneys' Fees and Costs (ECF No. 63). On December 1, 2021, the Court conducted a final settlement approval hearing. (ECF No. 68). Appearing on behalf of Plaintiff and the settlement class was C. Ryan Morgan, Esq., of Florida, admitted *pro hac vice*, and local counsel Ben Whaley LeClerq, who appeared telephonically. Charles E. McDonald, III, appeared on behalf of the Defendants. For the reasons stated herein and at the hearing, the Court grants these motions and approves the proposed settlement agreement.

**I. Background**

Plaintiff filed this action on September 14, 2020, alleging, on behalf of a purported class, violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. §§ 41-10-10 to 41-10-110.  (ECF No. 1).  On November 10, 2020, Plaintiff filed an Amended Complaint, alleging on behalf of himself and all similarly situated security officers employed by Defendants that Defendants violated the FLSA by failing to provide overtime compensation as a result of an improper timekeeping practice involving the rounding of time-clock entries and an illegal practice requiring workers to perform off-the-clock pre- and post-shift duties.  (ECF No. 21 at 5, 8–12).  Additionally, Plaintiff alleges Defendants violated the SCPWA by failing to pay Plaintiff and other putative class members all non-overtime wages due as a result of the illegal rounding and off-the-clock work policies.  *Id.* at 12–14.  Defendants deny any wrongdoing and, in particular, dispute that Plaintiff and the putative class performed work "off-the-clock."  (ECF No. 62-1 at 4).  The parties engaged in substantial written discovery during the pendency of this suit, including Defendants' production of all necessary class-wide data needed for an assessment of damages.  Such production included pay and time records for each class member.  *Id*. at 3–4.

*Proposed Settlement Terms*

On June 21, 2021, the parties filed a Joint Motion for Preliminary Approval of Settlement Agreement.  (ECF No. 52).  The settlement agreement provides that

2

Defendants' gross settlement amount will not exceed $325,000.00 in complete settlement of the action, including attorneys' fees and litigation expenses. (ECF No. 52-1 at 4). The settlement agreement further provides that the gross settlement fund shall be apportioned as follows: (1) attorneys' fees not to exceed $108,333.00, which is one-third of the gross settlement amount, and costs in the amount of $3,088.25, *id*. at 5; (2) service awards—payments for service to the class—to named Plaintiff Guy Morin in the amount of $2,000, and to Opt-In Plaintiffs Amanda Carpenter, Dexter Masters, William Parrington, Ryan Roper, Davisha Scott, Dusten Sprinkle, and Noah Tyson in an amount not to exceed $1,000 each, *id*. at 5–6; and (3) fees and costs of the Settlement Administrator, *id*. at 3, 6.

Under the terms of the proposed settlement agreement, following payment of these amounts from the $325,000 gross settlement fund, class members who file claims shall receive from the remaining net settlement fund shares to be determined as follows:

> i. First, for each Settlement Class Member who previously received a payment from Defendants pursuant to Defendants' September 30, 2020 correspondence, each Settlement Class Member will receive an equal amount of the payment previously received in consideration for liquidated damages under the FLSA.[1] . . .

---

[1] Shortly before this lawsuit was filed, Defendants voluntarily made payments—to account for unpaid time caused by the rounding policy—to its then-employed security officers for forty-five (45) minutes of overtime compensation for each week the officer worked within the two-year statute of limitations. (ECF No. 52-5 at 6 n.2). This provision was included in an effort "to fairly

    ii. Second, for each Settlement Class Member who worked within the two year [sic] FLSA statute of limitations but who did not previously receive a payment from Defendants as described above, each Settlement Class Member will be allocated 100% of the alleged amounts owed as a result of adding 45 minutes per week to their time records, plus an equal amount of liquidated damages.
. . .

    iii. Third, for each Settlement Class Member who had time worked within the three year [sic] statute of limitations, each Settlement Class Member will receive a pro rata share of the remaining Net Settlement Amount after the payments described above, based on adding 45 minutes per week to their time records, plus an equal amount of liquidated damages.

(ECF No. 52-1 at 7 (footnote added)).

Finally, the proposed settlement is a "common fund" settlement, meaning that Defendants retain any share/potential settlement payment from the net settlement fund that is attributable to class members who do not file claims. *Id*. at 8.

*Preliminary Approval*

On July 2, 2021, the Court entered an order granting the Joint Motion for Preliminary Approval of the settlement agreement and conditionally certifying as a class for settlement purposes "[a]ll persons who worked for Defendants, American Services, Inc. and American Security of Greenville, LLC, as Security Officers at the Greenville Memorial Hospital located at 701 Grove Rd, Greenville, SC 29605 at any

---

apportion the settlement funds between all class members, including those who were not part of the group who received these payments in September 2020." *Id*.

time from September 14, 2017 to March 1, 2020." (ECF No. 54 at 1). The Court further authorized the third-party Settlement Claims Administrator, as agreed by the parties under the terms of the proposed settlement agreement, to send a Notice of Class Action Settlement (the "Notice") to class members identifying the parties and summarizing the claims and allegations at issue in the lawsuit; explaining that a preliminary settlement in the amount of $325,000 had been reached through mediation; defining who was included in the settlement class; advising class members that the settlement amount would be reduced by attorneys' fees of up to $108,333.00 and litigation costs of $3,088.25; advising class members of their right to submit a claim, opt out of the settlement, and/or object to the settlement, and of the consequences of taking any of the foregoing actions or taking no action at all; explaining the claims process and the manner in which payments would be calculated; and notifying class members of the date of the final settlement approval hearing. (ECF Nos. 54 at 2; 52-3).

On August 6, 2021, the Settlement Administrator sent the Notice via U.S. First Class Mail to 349 class members. (ECF No. 62-2 at 3).[2] The Settlement

---

[2] For each of the 349 class members, Defendants produced the employee's name, last known address, and social security number. (ECF No 62-2 at 3). Before mailing the Notice, the Settlement Administrator used the National Change of Address database to update the list of last known addresses. *Id*. For any Notices that were returned as undeliverable without a forwarding address, the Settlement Administrator "performed an advanced address search (*i.e.*, skip trace) . . . using Accurint, a reputable research tool owned by Lexis-Nexis" to locate a current address based on the class member's name, previous address, and social security number. *Id*. The Settlement Administrator used this method to locate addresses and re-mail 25 Notices that had previously

Administrator was responsible for receiving claims from settlement class members during the notice and claim period, and represented to the court that, as of October 25, 2021, a total of sixty-one (61) qualified class members would be paid a share of the estimated $195,583.75 net settlement fund as calculated under the settlement agreement. *Id*. at 3–4.[3]  As noted, based on the representations of counsel at the final settlement hearing, the number of claimants will be increased by four.  The Notice informed class members of their right to request permission to speak at the final hearing, (ECF No. 52-3 at 7), but no such request was submitted.

According to the Settlement Administrator, the "Net Settlement Amount available to pay Participating Class Members [who filed claims]" was determined as follows:

| | |
|---|---|
| **Gross Settlement Fund:** | **$325,000.00** |
| Less Attorneys' Fees: | -$108,333.00 |
| Less Litigation Costs: | -  $3,088.25 |
| Less Settlement Administration - | $8,995.00 |
| Less Plaintiff Service Awards | -  $9,000.00 |
| **Net Settlement Fund** | **$195,583.75** |

---

been returned as undeliverable.  However, even using this method, the Settlement Administrator was unable to locate an updated address for ten (10) class members whose Notices had been returned as undeliverable.  *Id*.

[3] The Settlement Administrator received one request for exclusion from the settlement; no objections to the settlement agreement were filed.  (ECF No. 62-2 at 4).

(ECF No. 62-2 at 4). As of October 25, 2021, the highest settlement share calculated by the Settlement Administrator totals $2,874.74, while the average settlement share is approximately $722.04. *Id*.

### II. Motions for Final Approval of Settlement and for Attorneys' Fees

On November 19, 2021, the parties filed the instant Joint Motion for Final Approval of the Settlement Agreement. (ECF No. 62). The parties seek an order (1) granting final certification of the following settlement class:

> All Security Officers who worked for Defendants, American Services, Inc. and American Security of Greenville, LLC, at the Greenville Memorial Hospital located at 701 Grove Rd, Greenville, SC 29605 from September 14, 2017 to March 1, 2020;

(2) granting final approval of the proposed settlement agreement; (3) approving distribution of the net settlement amount as provided in the settlement agreement; (4) approving the payment of service awards specified in the settlement agreement; (5) approving payment of costs associated with the Settlement Claims Administrator; (6) approving the attorneys' fees and costs specified in the settlement agreement; and (7) dismissing the action with prejudice in accordance with the settlement agreement. *Id*. at 1–2.

The same day, Plaintiff filed an unopposed Motion to Approve Attorneys' Fees and Costs. (ECF No. 63). Specifically, Plaintiff seeks an order approving the attorneys' fees agreed upon by the parties as part of the negotiated settlement—

$108,333.00 or 33.3% of the maximum settlement amount—as well as costs of $3,088.25 as of November 19, 2021. *Id.* at 1.

On December 1, 2021, the Court conducted a final settlement approval hearing. (ECF No. 68). All counsel present represented to the court that, in their professional opinion as officers of the court, the settlement was fair and reasonable, having been reached after a full-day mediation in which the named Plaintiff and one other settlement class member participated. Counsel for both parties further represented that, in the 24-hour period prior to the hearing, four (4) additional settlement class members who had not submitted claims contacted Plaintiff's counsel and expressed the desire to participate in the net settlement fund. Counsel for both parties agreed that, despite the untimeliness of these requests, the four individuals should be considered Authorized Claimants under the settlement agreement and be permitted to participate in the distribution of the net settlement funds.

### III. Discussion

**A. Final Certification of the Settlement Class**

Before approving a collective action settlement for claims brought under the FLSA, the Court must make a final class certification determination. *See* 29 U.S.C. § 216(b); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 848 (D.S.C. 2016). In making this determination, the Court looks to "(1) the disparate

8

factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id*. (quoting *Rawls v. Augustine Home Health Care, Inc*., 244 F.R.D. 298, 300 (D. Md. 2007)).

As noted previously, on July 2, 2021, the Court preliminarily certified the following class for purposes of settlement in this action: "All persons who worked for Defendants, American Services, Inc. and American Security of Greenville, LLC, as Security Officers at the Greenville Memorial Hospital located at 701 Grove Rd, Greenville, SC 29605 at any time from September 14, 2017 to March 1, 2020." (ECF No. 54 at 1). Based on the materials before it, the Court concludes the relevant facts and circumstances for each class member are effectively indistinguishable. The Court further concludes that the proposed settlement is an efficient and cost-effective means of resolving a common claim asserted by each member of the class and that, as set forth below, the terms of the settlement further appear to be fair and equitable. Accordingly, the Court finds final certification of the proposed settlement class appropriate under 29 U.S.C. § 216(b).

Moreover, the settlement class is hereby certified as a final settlement class pursuant to Fed. R. Civ. P. 23 as well. Based on the record before it, the Court finds that (1) there are 349 members of the Settlement Class and joinder of all members is, therefore, impracticable; (2) there are questions of law and fact common to the

9

Settlement Class which predominate over any individual question; (3) the named Plaintiff's claims are typical of the claims of the Settlement Class; (4) the named Plaintiff and his counsel have fairly and adequately represented and protected the members of the Settlement Class; and (5) a class action is a more efficient and cost-effective means than others for the fair and efficient adjudication of the controversy. *In re Allura Fiber Cement Siding Litig.*, No. 2:19-cv-02886-DCN, 2021 WL 2043531, at *9 (D.S.C. May 21, 2021). Accordingly, the court finds that the prerequisites for a class action under Rule 23 have been satisfied and, therefore, issues a final certification of the settlement class under Rule 23 as well.

## B. Approval of the Proposed Settlement Agreement

### 1. Fairness under FLSA

Because this settlement involves an FLSA claim, this Court is charged with the responsibility of scrutinizing it for fairness. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) ("[T]he Fair Labor Standards Act is designed to prevent consenting adults from transacting about minimum wages and overtime pay."); *Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor, Emp't Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982) ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness"). The FLSA's

provisions are generally not subject to waiver, but a district court may approve a settlement if the settlement reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354.

In assessing proposed FLSA settlements, courts in this district have followed various approaches, including the Eleventh Circuit's framework in *Lynn's Food Stores*, which asks whether there is a bona fide dispute and whether the proposed settlement is fair and reasonable. *See, e.g.*, *Corominas v. ACI Holdings, LLC*, No. 2:15-CV-4372-PMD, 2016 WL 10520235 (D.S.C. Oct. 27, 2016); *Dominguez Arteaga v. Ecofoam Insulation & Coating of Charleston, LLC*, No. 9:18-cv-2147, 2019 WL 6057428 (D.S.C. Jan. 25, 2019); *Irvine*, 204 F. Supp. 3d at 849.   In this case, a bona fide dispute exists.  Plaintiffs allege Defendants failed to pay them overtime wages in violation of the FLSA and non-overtime wages in violation of SCPWA.  Defendants deny those allegations and assert that a number of defenses to those claims are available.  The Court concludes, therefore, that this action presents a legitimate and bona fide dispute under the FLSA.

Accordingly, the Court must consider the fairness and reasonableness of the proposed settlement.  The Court makes this assessment in light of six factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the

> experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Irvine,* 204 F. Supp. 3d at 849 (citing *Lomascolo v. Parsons Brinkerhoff, Inc.,* No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)). The Court finds each of these factors supports approval of the proposed settlement agreement in this case. As noted above, the parties engaged in substantial written discovery during the pendency of this suit. Defendants' production of pay and time records for 349 class members permitted Plaintiff's counsel to assess the class-wide damages and provided a basis for the parties to successfully negotiate a settlement during mediation. (ECF No. 62-1 at 3). The settlement negotiations in this action were conducted at arms-length and nothing before the court suggests fraud or collusion. *See Irvine,* 204 F. Supp. 3d at 850 (presuming the absence of fraud or collusion unless there is evidence to the contrary). Additionally, the Court finds all counsel in this case to be experienced in FLSA litigation and able to competently evaluate the claims and defenses in this action. All counsel agree that the proposed settlement constitutes a fair and reasonable compromise to the claims raised here. In view of the stage of litigation, absence of fraud, the negotiated settlement amount, and the experience and expertise of counsel, the Court finds the settlement amount to be fair and reasonable.

Finally, in addition to the fairness and reasonableness of the settlement, the Court must also consider whether the unopposed request for attorneys' fees is reasonable. *See Silva v. Miller*, 307 Fed. App'x 349, 351 (11th Cir. 2009) ("FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement."). Courts in the Fourth Circuit consider 12 *Barber* factors to determine the fairness and reasonableness of a proposed fee:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 266 n.28 (4th Cir. 1978)). The Court has carefully considered each of the 12 factors in making a reasonableness determination of the attorneys' fees set forth in the proposed settlement agreement (ECF No. 52-1 at 5) and requested in the unopposed motion (ECF No. 63). The Court finds that the

majority of the foregoing factors suggest that the proposed attorneys' fee request of $108,333.00 is fair and reasonable. In particular, the Court finds the following factors persuasive:

- As of November 19, 2021, Plaintiffs' counsel had expended over 140 hours litigating the claims in this action and can reasonably be expected to have spent numerous additional hours preparing for and attending the final hearing and to spend additional time finalizing the details of settlement hereafter. (ECF No. 62-3 at 5).

- The instant litigation includes a number of difficult and complex issues, including whether Defendants' alleged practice of rounding time entries was permissible under the FLSA; whether alleged pre- and post-shift duties effectively required "off-the-clock" work; and whether an FLSA limitations period applied to significantly limit damages. (ECF No. 63 at 7).

- As already noted, a number of issues in this case are difficult and complex and required considerable skill and expertise to resolve.

- Plaintiff's counsel took this case on a contingency basis. As a general matter, "a contingent fee lawyer may have the right to expect a fee greater than if his fee were guaranteed" as "a contingent fee case is in some sense a gamble on the merits of each case." *Va. Acad. of Clinical Psychologists*

*v. Blue Shield of Va.*, 543 F. Supp. 126, 148 (E.D. Va. 1982). The requested fee award of $108,333.00 constitutes 33.3% of the proposed gross settlement amount. (ECF No. 52-1 at 5). Courts have typically recognized that this percentage is reasonable in similar collective action cases. *See, e.g.*, *In re Allura Fiber Cement Siding Litig.*, 2021 WL 2043531 at *4 ("Courts in the Fourth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund are reasonable."); *Mullinax v. Parker Sewer & Fire Subdistrict*, No. 6:12-cv-01405-TMC, 2014 WL 12774925, at *9 (D.S.C. Mar. 11, 2014) ("One-third of the recovery appears to be a fairly common percentage in contingency cases, especially where the total settlement amount is not so large as to produce a windfall of the plaintiffs' attorneys based solely on the number of class members."). The Court further notes that none of the participating class members have objected to the fee request.

- Under the proposed settlement, participating class members will "receive a substantial percentage of their back pay amount"—a significant consideration in determining the reasonableness of attorney's fees. *McClaran v. Carolina Ale House Operating Co., LLC*, No. 3:14-cv-03884-MBS, 2015 WL 5037836, at *4 (D.S.C. Aug. 26, 2015). In fact, the degree of success obtained is generally recognized as "the most critical factor in

determining the reasonableness of a fee award." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted). Counsel achieved a high degree of success in reaching the proposed settlement which afforded class members the opportunity to recover 100% of their alleged unpaid wages during the two-year limitations period and 60% of such wages during the third year.

Additionally, in light of the complexity and duration of the litigation to this point, the court concludes that the request for costs in the amount of $3,088.25 is reasonable and fair.

In sum, as reflected in the forgoing discussion, the Court concludes that the proposed settlement constitutes a fair, reasonable, and adequate resolution and settlement of a bona fide dispute under the FLSA.

**2. Fairness under Rule 23(e)**

Like the settlement of Plaintiff's FLSA claims, settlement of Plaintiff's class claims under the SCPWA must be approved under Rule 23(e) of the FRCP. *Mullinax*, 2014 WL 12774925 at *4 ("Settlements of class actions under Rule 23, Fed. R. Civ. P., and collective actions under the FLSA require court approval."); *see also* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). "To approve a class

action settlement [pursuant to Rule 23], a court must ensure that the interests of all class members have been protected, and the court must be convinced that the settlement is fair, reasonable, and adequate." *Mullinax*, 2014 WL 12774925 at *4 (internal quotation marks omitted). Essentially the same standard for approving collective FLSA settlements is "applied in evaluating settlements of Rule 23 classes." *Id*. In the Fourth Circuit, courts consider these factors when determining whether a proposed class-action settlement is fair and reasonable and should be approved under Rule 23(e): (1) the extent of discovery conducted, (2) the stage of the proceedings, (3) the absence of bad faith or collusion in the settlement, and (4) the experience of counsel who has represented plaintiffs in the settlement negotiations." *Id*. (citing *Flinn v. FMC Corp.*, 528 F. 2d 1169, 1173 (4th Cir. 1975)). Furthermore, in assessing the adequacy of the settlement, additional considerations are relevant, including: "(1) the relative strength of plaintiffs' case and the difficulties of proof or the strength of defendants' defenses; (2) the anticipated duration and expense of additional litigation; and (3) the degree of opposition to the settlement as expressed through objections or opt-outs." *In re Allura Fiber Cement Siding Litig.*, 2021 WL 2043531 at *2. In considering all of these factors, the Court is mindful that "[t]here is a presumption of fairness, reasonableness, and adequacy when a class settlement is achieved through arms-length negotiations between experienced and capable counsel after meaningful discovery." *Id*.

As previously discussed, the proposed settlement was negotiated by counsel with experience in claims of this nature after substantial discovery and after the mediation process. The court concludes the settlement was honestly and fairly reached after an arms-length negotiation and, therefore, finds that a presumption of fairness, reasonableness, and adequacy attaches to the proposed settlement.

Furthermore, having considered the factors relevant to a determination of whether a class settlement is reasonable for purposes of Rule 23—most of which overlap with the reasonableness factors the Court has already considered under the FLSA—the court finds no reason to conclude that the presumption of fairness, reasonableness, and adequacy has been rebutted. As noted by the parties,

> [T]he issues are complex and will be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the Parties would need to prepare for and conduct a trial with numerous witnesses, experts and records. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation. Given these risks, further litigation could result in no recovery for Class Members or a significant judgment against Defendants.

(ECF No. 62-1 at 12). Pursuant to the proposed settlement agreement, however, class members are afforded the opportunity to recover 100% of their alleged unpaid wages during the two-year limitations period and 60% of such wages during the third year. Accordingly, the Court finds that the proposed class settlement is fair, reasonable, and adequate in the context of a fairness assessment under Rule 23.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** the parties' request for final certification of the following class for purposes of settlement:

**All Security Officers who worked for Defendants, American Services, Inc. and American Security of Greenville, LLC, at the Greenville Memorial Hospital located at 701 Grove Rd, Greenville, SC 29605 from September 14, 2017 to March 1, 2020**.

The Court **GRANTS** the joint motion for final approval of the settlement agreement (ECF No. 62) and hereby **APPROVES** the settlement agreement, finding it is a fair, reasonable, and adequate settlement of bona fide disputes under the FLSA and the SCPWA. Pursuant to the settlement agreement, the Court specifically approves:

> ▪ distribution of the Net Settlement amount as set forth in the settlement agreement;
>
> ▪ service payments to the Class Representative Guy Morin in the amount of $2,000 and to opt-in Plaintiffs Amanda Carpenter, Dexter Masters, William Parrington, Ryan Roper, Davisha Scott, Dusten Sprinkle, and Noah Tyson in the amount of $1,000 each; and
>
> ▪ payment of the actual costs of the Settlement Claims Administrator in the amount of $8,995.

The Court **GRANTS** the unopposed motion for attorneys' fees and costs (ECF No. 63), having concluded that the requested fees are fair and reasonable.

Accordingly, the Court hereby approves payment of attorneys' fees to Class Counsel in the amount of $108,333.00 and litigation costs of $3,088.25.

All claims asserted in this litigation are hereby **DISMISSED** with prejudice. The court retains jurisdiction to enforce the terms of the settlement agreement.

    **IT IS SO ORDERED.**

                                            s/ Timothy M. Cain
                                            United States District Judge

December 1, 2021
Anderson, South Carolina